NEHEMIAH BERRY & others *vs.* THOMAS RADDIN & others.

Depositions taken in 1678 before a judge of a court and certified by him and immediately afterwards recorded in the registry of deeds under a colonial statute authorizing the same to be done, although *ex parte*, are competent evidence to prove a prior grant of land by vote of a town, it being shown that the town records of that time have all been destroyed.

A grant by the town of Lynn of the use of the water of a stream flowing from a " great pond," and of the right to make sluices, and build a dam at the head of the stream in order to create a head of water, prior to the colony ordinance of 1641-47, and before any of the land bordering on the stream had been granted, vested a valid title in the grantee.

BILL IN EQUITY to restrain the defendants from damming up and using the water of Strawberry Brook in Lynn to the injury of the plaintiff's mill situated upon the same stream below.

The plaintiffs claimed title under an alleged grant by the town of Lynn to Edward Tomlins, his heirs and assigns, of the land where their mill is situated, and also the right to the free and uninterrupted use and control of all the water in the brook from Flax Pond, from which it flows, to the mill, a distance of about one mile and a half. It was agreed that the plaintiffs have the title of Tomlins, whatever that might be; that Flax Pond is a

natural pond, having an area of more than ten acres; and that it and the stream are within the limits of Lynn. The other facts are stated sufficiently in the opinion.

The case was reserved, by *Chapman*, J., for the determination of the whole court.

*H. W. Paine*, (*D. Peabody* with him,) for the plaintiffs.

*J. G. Abbott*, ( *T. B. Newhall* with him,) for the defendants.

BIGELOW, C. J. It seems to us that the depositions or affidavits offered by the plaintiffs in support of their title are competent and admissible. The plaintiffs seek to trace the grants under which they hold the property in controversy back to an early vote of the town of Lynn, passed in the year 1633. The production of the record of the doings of the town at that time is impossible, because all the books containing them prior to the year 1690 are either lost or destroyed. It was necessary, therefore, to prove the existence of the alleged vote or grant by secondary evidence. For this purpose, copies of the statements of certain witnesses taken under oath in 1678, of the vote passed by the town in 1633 granting the mill and water privilege in question to Edward Tomlins, the original grantee, were offered in evidence. These copies are duly certified by the register of deeds for the county of Essex as having been recorded in the books of record of that county in the year 1678, at or about the time the testimony of the witnesses was taken. By a colonial act of 1641–42, Anc. Chart. 86, the clerk of the county court was required to record all deeds and grants of lands, houses and hereditaments. By a subsequent act of the colony, Anc. Chart. 182, it was provided that every man should have liberty " to record in the public rolls of any court any testimony given upon oath in the same court or before two magistrates, or any deed or evidence legally confirmed, there to remain *in perpetuam rei memoriam."* By the copies of the depositions or affidavits offered by the plaintiffs, it appears that they were taken before William Hathorne, the *jurat* affixed to each of them purporting to have been certified by him as an " assistant." By reference to 5 Mass. Col. Rec. 179, of the date of May 1678, a few weeks prior to the time when the testimony of these witnesses was taken. it

appears that William Hathorne, then one of the assistants of the colony, was appointed, commissioned and empowered to keep the county courts for that year in Norfolk, which at that time embraced the northeasterly portion of the territory now included within the county of Essex.

These facts, relating to a matter of such ancient date, leave no room for question as to the competency of the documents as evidence, and to remove all doubt or suspicion as to their genuineness and authenticity. They purport to be the testimony of witnesses given before a judge of a court. They were certified by him, and were placed on record immediately after they were taken. The fact that they were so entered of record affords a strong presumption that they were duly and properly taken, so as to come within the provisions of the law above cited, which required the clerk of the county court to put on record the testimony of witnesses, to be preserved in order to perpetuate the evidence of the facts to which they related. This appears to have been the only authority, under the laws then existing, by which documents of that character were permitted to be made matters of record. In this particular their competency rests on the same ground as that of other ancient writings which come from a proper custody and place, and this record furnishes sufficient ground for the presumption that they were duly and properly taken, and are admissible for the purpose for which the law authorized them to be put on the public records. The rules of law and the practice of courts regulating the competency of deeds, writings and documents of great antiquity, fully sanction the admission of these copies in evidence. *Rust* v. *Boston Mill Corp.* 6 Pick. 158. *King* v. *Little*, 1 Cush. 436. *Boston* v. *Weymouth*, 4 Cush. 538. 1 Greenl. Ev. § 570, and cases cited.

It is contended by the counsel for the defendants that, if the grant of the town of Lynn under which the plaintiffs claim is established by this evidence, it was not competent for the town to make it, and no valid title under it can be set up. There can be no doubt that the town of Lynn, by its establishment under the authority of the general court of the colony, became the

owner of all the land and water included within its boundaries, with full power to grant any portion of either, except such as from its nature they held in trust for a public use or purpose. This is not controverted by the defendants. The point on which they insist is, that one of the ponds mentioned in the alleged vote or grant of the town was of more than ten acres in extent, and that, being a "great pond," it was held by the town for the public use only, under the ordinance of 1647, and that they could not alien to an individual any exclusive title to it.

This would be true, if prior to the year 1647 the pond had not been appropriated to private persons. *West Roxbury* v. *Stoddard*, 7 Allen, 158. But the decisive answer to this objection to the plaintiffs' title is, that they do not claim any right or title to the pond or to the waters thereof, so long as they remain within its limits. The grant was not of the pond, but of the waters which flowed therefrom, and the right to regulate and control the flow thereof by the erection of dams and sluices and other methods at its outlet for the convenient and advantageous operation of a mill on the brook or stream which runs out of said pond. The grant of such a right could in no way interfere with any use for which the waters of the pond were held by the town under the colony ordinance, or impair the full enjoyment of it by the public. The grant was therefore one which it was competent for the town to make.

It is further objected by the defendants that the evidence of the grants from the town does not show a title in the plaintiffs to the use of the waters flowing from the ponds named in the bill, and in the brook or stream formed thereby, nor does it establish a right to regulate and control them to the exclusion of any right or title in the defendants thereto. But on looking at the depositions by which the terms of the grants are proved, it seems to us that they were so broad and comprehensive as to convey all the right in the waters flowing from the pond and in the stream connected therewith which the town could convey. It appears that two distinct votes were passed, giving a right to these waters to the original grantee, and that they both preceded any grant of any portion of the land bordering on the stream to

Berry & others *v.* Raddin & others.

other persons. The second vote or grant was made because it was found that the right acquired under the first was inadequate to the operation of the mill, especially in a dry season, and the object of it was to extend the privilege so as to render it certain that " the mill could supply the town." There was no riparian proprietor on the stream at the time of the second vote, whose rights could be interfered with, it appearing that it was passed " before any meddow in the towne was granted to any man." By the evidence of one of the witnesses, the grantee " desired leave of the towne to make a dam in the upper pond to keep a head of water against the height of summer time," and the town granted him the place " freely for ye use of the mill that he might have supply of water to grind with." By the evidence of another witness the grant was " all the water and watercourses and sluices as his right, nor noe man was to molest him or trouble him in his proper right." It is difficult to see how the grant of all the water in the stream and the right to control and regulate its flow from the pond could be expressed in language more clear and comprehensive. And the intent that it should be taken in its broadest sense is manifest from the fact that the vote was passed in order to supply a deficiency which had been found to exist under the previous grant, and to render it certain that the mill on which the inhabitants relied for the grinding of their corn should have a sufficiency of water to operate it at all times. The rule of interpretation applicable to ancient grants of this species of property is, that the words are to be construed most liberally in favor of the grantee, especially where the subject of the grant was intended for a purpose of a *quasi* public character like a mill, which the necessities and con venience of the inhabitants of a town during the first years of its settlement absolutely required. It may be added that the ancient deeds in the line of the plaintiffs' title, subsequent to the grant of the town, clearly show that this interpretation of the words of the original grant is in accordance with the contemporaneous understanding of the extent of their title by the owners during a long series of years.

For these reasons, being also of opinion that the evidence of

a right acquired by adverse use is insufficient to establish that ground of defence, a decree must be entered for the plaintiffs.

*Decree accordingly.*